# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-429-DCK

| | |
|---|---|
| AXXON INTERNATIONAL, LLC, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| GC EQUIPMENT, LLC; and GLOBECORE GmbH | ) |
| Defendants. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant GC Equipment, LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Document No. 32). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will deny the motion.

## I. BACKGROUND

Plaintiff Axxon International, LLC ("Plaintiff" or "Axxon"), initiated this action with the filing of its Complaint (Document No. 1) against Defendant GC Equipment, LLC, doing business as Globecore GmbH, on July 20, 2017. GC Equipment, LLC ("GC Equipment" or "Defendant") originally argued for dismissal based on insufficient process and insufficient service of process pursuant to Fed.R.Civ.P 12(b)(4) and 12(b)(5) in a "Motion To Dismiss" filed on September 5, 2017. (Document No. 12). GC Equipment later withdrew its original motion to dismiss on September 20, 2017. (Document No. 20).

On November 20, 2017, GC Equipment filed a "Motion to Dismiss, Answer, And Affirmative Defenses." (Document No. 21). GC Equipment's Answer asserted for the first time

that there is a lack of personal jurisdiction.  (Document No. 21, p. 1).  The Answer also asserted that GC Equipment should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).  (Document No. 21, p. 2).[1]

The parties consented to Magistrate Judge jurisdiction on December 8, 2017, and this case was reassigned to the undersigned.  (Document Nos. 22 and 23).  On January 31, 2018, the Court issued the "Pretrial Order And Case Management Plan" (Document No. 26).  The "…Case Management Plan" includes the following deadlines:  discovery – September 24, 2018;  mediation – October 15, 2018;  and dispositive motions -  October 22, 2018.  Id.

Plaintiff filed an "Amended Complaint" on March 20, 2018, naming both GC Equipment *and* Globecore GmbH ("Globecore") as Defendants.  (Document No. 28).

The Amended Complaint states that Plaintiff is a limited liability company, organized and existing under the laws of the State of North Carolina, with its principal place of business in Rock Hill, South Carolina.  (Document No. 28, p. 1).  Plaintiff's members are Randy Lenz ("Lenz"), Art Ward ("Ward"), and Equity Investment Partners, LLC ("EIP").  Id.  Lenz is a citizen of Florida and Ward is a citizen of South Carolina.  Id.  EIP's members are The Adler Trust and the KMR Trust.  (Document No. 28, pp. 1-2).  The Trustees and beneficiaries of the Adler Trust and KMR Trust are not citizens of California.  Id.  Plaintiff is "a wholesale supplier of medical equipment and industrial machinery and fabrication," providing "complete project management support for local, state, and federal agencies."  (Document No. 28, p. 4).

---

[1] The undersigned notes that motions to dismiss contained in the initial responsive pleadings are deemed by the Court to merely preserve the issue(s) and will not be addressed by the Court.  See Local Rule 7.1(c)(1).  A party seeking a decision on a preserved motion must file a separate motion and supporting brief.  Id.

The Amended Complaint describes GC Equipment as "a limited liability company, organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California." (Document 28, p. 2). GC Equipment's members are Dylan Baum ("Baum") and Richard Messina ("Messina"), both citizens of California. Id.

Defendant Globecore "is a foreign corporation organized and existing under the laws of Germany, with its principal place of business in Oldenburg Eversten, Germany." Id. Plaintiff contends that Globecore "is a transformer oil filtration equipment manufacturer that sells and manufactures industrial equipment for the production of bitumen and transformer oil purification and regeneration across the country." (Document No. 28, p. 4). GC Equipment is Globecore's "factory franchised new equipment/material dealer with full parts, service, and warranty capacity in the United States." (Document 28, p. 4).

Plaintiff entered into a contract (the "USACE Contract") with the U.S. Army Corp. of Engineers (the "USACE") on September 30, 2016, that was later modified on October 17, 2017. Id. See also (Document No. 28-1 and 28-2).

Plaintiff contracted with Globecore through a "Purchase Order" in November 2016, to provide an oil filtration system in fulfillment of Plaintiff's USACE contract. (Document No. 28, p. 4). Baum, of GC Equipment, executed the "Purchase Order" agreement (the "Globecore Contract") as Globecore's authorized agent on November 9, 2016. Id. See also (Document No. 28, p. 3; Document No. 30, p. 6). The Globecore Contract designates Globecore and/or Dylan Baum as "Vendor" and provides an address in Dickinson, Texas. (Document No. 28-3).[2] Plaintiff paid a $20,000.00 deposit in accordance with the Globecore Contract to GC Equipment as the agent for Globecore. (Document No. 28, p. 5).

---

[2] To date, neither side has addressed any relevance of the Texas address in this matter.

3

According to the Complaint, this Court has in personam jurisdiction over GC Equipment and Globecore because of their "substantial and continuous contacts with the State of North Carolina, including entering into a subcontractor agreement with North Carolina." (Document No. 28, p. 2). Additionally, Plaintiff asserts that the Globecore Contract "has a mandatory venue provision, which requires that venue for any dispute shall be in North Carolina." Id.; see also, (Document No. 23-3). Plaintiff maintains that GC Equipment "was and is Globecore's authorized agent to act on behalf of Globecore," and acted as Globecore's authorized agent pertaining to the Globecore Contract. Id. Plaintiff also asserts that GC Equipment had "routine and continuous" contact with Plaintiff in North Carolina regarding execution of the underlying agreement(s). (Document No. 28, pp. 2-3).

The Amended Complaint asserts claims for: (1) breach of contract against Globecore; and (2) intentional interference with contract against both GC Equipment and Globecore. (Document No. 28, pp. 7-10). Plaintiff contends that GC Equipment and Globecore "knowingly and willfully interfered with Axxon's contractual relationship with USACE." (Document No. 28, p.9).

The "Amended Complaint" notes that it was filed with opposing counsel's written consent. (Document No. 28, p. 1, n. 1). Moreover, on April 3, 2018, "Defendant GC Equipment LLC's Written Consent To Amend Complaint" was filed with the Court confirming that GC Equipment consented to allowing Plaintiff to amend its Complaint, naming GC Equipment as a Defendant, on March 20, 2018. (Document No. 29). Neither the "Amended Complaint," nor "Defendant GC Equipment LLC's Written Consent To Amend Complaint" suggest that GC Equipment disputed the Court's jurisdiction in this matter. (Document Nos. 28 and 29). However, "Defendant GC Equipment LLC's Motion To Dismiss, Answer, And Affirmative Defenses In Response To

Plaintiff's Amended Complaint" (Document No. 30) was also filed on April 3, 2018, and in that pleading again included motions to dismiss pursuant to Fed.R.Civ.P. 12 (b)(2) and 12(b)(6).

Now pending before the Court is "Defendant GC Equipment LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Document No. 32) and "Brief in Support . . ." (Document No. 33), filed April 17, 2018. GC Equipment seeks dismissal of this action pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction. (Document No. 32). GC Equipment contends that it is not subject to personal jurisdiction in North Carolina because it lacks the requisite contacts with the forum state. (Document No. 33, p. 7). "Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss" was filed May 1, 2018; and "Defendant GC Equipment LLC's Reply Brief in Support of . . ." was filed May 8, 2018.

The pending "…Motion to Dismiss for Lack of Personal Jurisdiction" is now ripe for review and disposition.

## II.  STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F. 2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence . . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676 (internal citations omitted).  "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing."  Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990).  The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. December 20, 2006).  "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction…." Id.

There are two varieties of personal jurisdiction, general and specific.  General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case.  Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum.  Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Questions of jurisdiction are answered by a two-step analysis:  (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction;  and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution.  Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991).  The statutory inquiry merges with the constitutional inquiry, essentially becoming one.  See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the

6

State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)).

### III. DISCUSSION

In seeking dismissal of this action, GC Equipment asserts three main arguments: (1) it had insufficient contacts with North Carolina to support jurisdiction; (2) the forum selection clause in the Globecore Contract does not bind GC; and (3) its personal jurisdiction defense had been properly preserved – and not waived. (Document No. 32, p. 2). GC Equipment concludes, based on its contacts with North Carolina, or lack thereof, that personal jurisdiction does not exist. (Document No. 32). GC Equipment appears to have abandoned its initial argument that this matter be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). See (Document Nos. 21 and 30).

**A. Contacts with North Carolina**

GC Equipment first argues that it did not engage in substantial activities in North Carolina and that there is no documentary support showing otherwise. (Document No. 33, p. 8). GC Equipment contends that Plaintiff has failed to show, "that any events giving rise to this Claim for Relief occurred in the State of North Carolina." (Document No. 33 p. 2) (citing Document No. 28, pp. 8-10). GC Equipment asserts that Plaintiff does not identify a business office in North Carolina, and that the USACE Contract and the deposit check both bore the address of Plaintiff's office in South Carolina. (Document No. 33, pp. 8-9). Furthermore, GC Equipment maintains that "the relevant inquiry lies in the activities undertaken by GC Equipment by which it purposely availed itself of the privilege of conducting business in the State of North Carolina," and that, "the contacts in question must be contacts that the 'defendant *himself* creates with the forum state.'" (Document No. 33, p. 9) (quoting Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014)). GC Equipment

7

contends that because it, "undertook no activities in the State of North Carolina and there is no relationship between [Plaintiff's] claims and the State of North Carolina," personal jurisdiction does not exist. (Document No. 33, p. 10).

In opposition to the motion, Plaintiff maintains that specific personal jurisdiction over GC Equipment is constitutionally reasonable due to GC Equipment's contacts with Plaintiff. (Document No. 34, p. 14). Plaintiff explains that it is not the number of contacts a defendant has with a forum but the "quality and nature" of the contacts which guide the specific jurisdiction determination. Id. (citing First Am. First, Inc. v. Nat'l Ass'n of Bank Women, 802 F.2d 1511, 1516 (4th Cir. 1986)). Plaintiff notes that this Court uses three factors in a specific jurisdiction analysis:

> (1) the extent to which GC Equipment purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether Axxon's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.

Id.

First, Plaintiff argues that its tortious interference with contract claim against GC Equipment "establishes the necessary elements and provides an additional basis for jurisdiction over GC Equipment in North Carolina." (Document No. 34, pp. 14-15). Plaintiff further states that "Axxon is a North Carolina company" and that "the contract is under North Carolina law and venue is mandatory in North Carolina."[3] (Document No. 34, pp. 15, 17).

Next, Plaintiff maintains that the claims arise directly from GC Equipment's contacts with North Carolina. (Document No. 34, p. 16). Plaintiff explains that it "is a North Carolina Limited Liability Company and is organized and exists under the laws of the state of North Carolina."

---

[3] Plaintiff does not explicitly state which contract it is referring to here; presumably, the Globecore Contract.

(citing Document No. 34-6, p. 2). Plaintiff has an office located in Charlotte, North Carolina and asserts that "[a]ll major business dealings, legal issues, and issues pertaining to the contract at issue in this case were conducted by Lenz out of the Charlotte office." Id. Plaintiff further asserts that the bank account from which the deposit check to GC Equipment was paid, is in North Carolina. (Document No. 34-6, p. 3).

Finally, Plaintiff contends that this Court's exercise of personal jurisdiction over GC Equipment is constitutionally reasonable. (Document No. 34, p. 17). This third factor, considers whether litigation in the forum state would be too burdensome as to place the defendant at a "severe disadvantage in comparison to his opponent." Id. (citing Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 303 (4th Cir. 2012)). Plaintiff cites five additional factors that this Court has used to establish reasonableness where there are fewer contacts:

> (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the efficient resolution of controversies as between states; (5) the shared interests of the several states in furthering fundamental substantive social policies.

Id. (citing Marx Indus., Inc. v. Chestnut Ridge Foam, Inc., 903 F. Supp. 2d 358, 365 (W.D.N.C. 2012). Plaintiff argues that, "[e]ach of these factors weighs in favor of this Court's exercise of jurisdiction." (Document No. 34, p. 17).

As to the first factor, Plaintiff explains that the burden on GC Equipment would be minimal since "GC Equipment has already engaged North Carolina counsel to represent its interests," and "this Court and the Fourth Circuit have noted, a defendant's hiring of local counsel weighs in favor of exercising jurisdiction." (Document No. 34, pp. 17-18) (citing Marx Indus., 903 F. Supp. 2d at 366). As to the second factor, Plaintiff states that "North Carolina has a strong interest in vindicating the rights of its citizens" and has a "strong interest in protecting the corporate entities

9

. . . contributing to the economic well-being of the area." (Document No. 34, p. 18); See Lee v. Walworth Valve, Co., 482 F.2d 297, 299-300 (4th Cir. 1973); see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 297 (4th Cir. 2009). As to the third factor, Plaintiff maintains that Globecore and GC Equipment's actions were damaging and that Plaintiff "has a strong interest in redressing these harms." (Document No. 34, p. 18). As to the fourth factor, Plaintiff contends that judicial efficiency favors exercise of jurisdiction. Id. The parties required to litigate this matter are in North Carolina, Washington, and California. (Document No. 34, p. 19). Plaintiff argues that, "this District is as convenient a forum as is Washington or California" and "GC Equipment does not suggest an alternative forum that would better promote efficient resolution of this matter." Id. Finally, as to the fifth factor, Plaintiff explains that there is no fundamental social policy that weighs against this Court's exercise of jurisdiction and that GC Equipment does not argue otherwise. Id.

In reply, GC Equipment first asserts that Plaintiff failed to show that GC Equipment created substantial contacts with the state of North Carolina. (Document No. 35, p. 3) (citing Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). There is no "specific evidence that [Plaintiff] maintains an office in North Carolina," including a physical address or a telephone number. Id. GC Equipment explains that the USACE Contract, Plaintiff's deposit check, the "contact us" page of Plaintiff's website, and Plaintiff's correspondence with GC Equipment, "list only a South Carolina address, telephone number, and fax number" and there are no references to North Carolina. Id. GC Equipment maintains that "to its knowledge, [it] always communicated with [Plaintiff] through [Plaintiff's] South Carolina address and telephone number and was not aware of any activities allegedly undertaken by [Plaintiff] in North Carolina." (Document No. 35, p. 4).

10

Next, GC Equipment argues that Plaintiff does not demonstrate that any of GC Equipment's alleged wrongful acts were directed at the state of North Carolina. Id. GC Equipment notes that for a claim of tortious interference, the 4th Circuit applies the "Calder effects test" to determine if a defendant has acted in a way that avails itself to the forum. (Document No. 35, p. 5); See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 260 (3rd Cir. 1998). The effects test requires the plaintiff to allege that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Id. (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 280 (4th Cir. 2009)).

GC Equipment maintains that Plaintiff "fails to satisfy the third requirement of the Calder test, which requires GC Equipment to have expressly aimed its alleged tortious activity at North Carolina." Id. GC Equipment argues that Plaintiff is only alleging that GC Equipment tortuously interfered with Plaintiff's contract with the USACE. Id. Plaintiff's contract with the USACE was for a project in Washington State. Id. Therefore, GC Equipment asserts that Plaintiff has failed to demonstrate that GC Equipment expressly aimed the alleged tortious conduct at North Carolina.

**B. Forum Selection Clause**

The Globecore Contract signed by Defendant GC Equipment's member and representative, Dylan Baum, acting as an agent for Defendant Globecore states:

> **The Parties to this business contract** hereby agree and covenant that if **any dispute** arises under this agreement and such dispute is subject to court action or arbitration that the prevailing party(ies) in such dispute shall be entitled to receive from the non-prevailing party(ies) its reasonable attorneys' fees and litigation expenses. The **parties hereto** agree that this is a business contract and this

> provision is a reciprocal attorneys' fees provision as such terms are used pursuant to **N.C.G.S. § 6-21.6**. **It is agreed and understood by and between the parties hereto that venue, in the event of any dispute, shall be in the state of North Carolina, USA**.

(Document No. 28-3, p. 2) (emphasis added).

GC Equipment asserts that it is not subject to the forum selection clause because Plaintiff contracted with Globecore and not GC Equipment, as is acknowledged in the Amended Complaint. (Document No. 33, p. 10) (citing Document No. 28, p. 4). GC Equipment contends that it "acted merely as Globecore's agent in signing the contract for Globecore." Id. GC Equipment argues that, "[a]n agent does not become liable because of his principal's breach of contract negotiated by the agent for the principal." Id. (citing Forbes Homes v. Trimpi, 349 S.E.2d 852, 856 (1986)).

In addition, GC Equipment maintains that Plaintiff's claim of intentional interference did not "grow out of" the Globecore Contract; rather, Plaintiff's claim arises from GC Equipment's alleged interference with Plaintiff's USACE Contract. (Document No. 33, p. 12). Moreover, Plaintiff has not alleged that GC Equipment is the alter ego of Globecore. Id.

Plaintiff responds by asserting that the forum selection clause in the Globecore Contract is binding on GC Equipment. (Document No. 34, p. 8). Plaintiff notes the following holding from the Eastern District of North Carolina:

> **a forum selection clause may apply to non-signatories where the alleged conduct of those non-signatories is closely related to the contractual relationship**. Manetti–Farrow, Inc., 858 F.2d at 514 n. 5; see Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998) (noting that when a non-signatory defendant's interests are "directly related to, if not predicated upon, the [signatory defendant's] conduct" **the non-signatory defendant is bound**); Belfiore v. Summit Fed. Credit Union, 452 F.Supp.2d 629, 633 (D.Md.2006) ("With regard to non-parties being covered by choice of forum clauses, **it is generally held that all participants, parties, and non-parties are covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question**.").

12

(Document No. 34, p. 9) (quoting NC Contracting, Inc. v. Munlake Contractors, Inc., 5:11-CV-766-FL, 2012 WL 5303295, at *7 (E.D.N.C. Oct. 25, 2012)) (emphasis added). See also Big League Analysis, LLC v. Office of Comm'r of Baseball, 15 CVS 16800, 2016 WL 4684670, at *6 (N.C. Super. Aug. 29, 2016); and Bartels by & through Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 679 (4th Cir. 2018) (citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416–17 (4th Cir. 2000)) ("We have likewise explained that '[w]ell-established common law principles,' including estoppel and alter-ego theories, may bind a non-signatory to a contractual clause executed by a third party").

Plaintiff contends that "[as] an agent of Globecore, and the entity that entered into the Globecore Contract, GC Equipment is bound by the forum selection clause." (Document No. 34, p. 12-13). Additionally, Plaintiff argues that the claims against both Defendants are interrelated and that "GC Equipment's tortious interference with the contractual relationship between Axxon and the USACE violates the clear provisions of the Globecore Contract in which Globecore and its agent, GC Equipment, agreed they would 'not interact with any personnel representing the Federal Government regarding this contract." Id. (citing Document No. 28, ¶ 26 and Document No. 28-3). Plaintiff contends that "GC Equipment actively participated as the agent of Globecore" and "under an agency theory, GC Equipment is bound by the forum selection clause." (Document No. 34, p. 13).

In reply, GC Equipment relies on Forbes Homes for the principle that "[a]n agent does not become liable because of his principal's breach of contract negotiated by the agent for the principal." (Document No. 35, p. 7) (citing Forbes Homes v. Trimpi, 349 S.E.2d 852, 856 (1986)). GC Equipment then goes on to distinguish cases cited by Plaintiff, noting that "none of those authorities involved the defense of personal jurisdiction asserted by the non-party agent." Id.

**C. Waiver of Personal Jurisdiction.**

GC Equipment next asserts that it preserved its personal jurisdiction defense by raising the defense as a motion to dismiss in its Answer to Plaintiff's original Complaint. (Document No. 33, p. 13) (citing Document No. 21). GC Equipment explains that it also raised the personal jurisdiction defense in response to Plaintiff's Amended Complaint, which was filed on April 3, 2018. Id.

GC Equipment contends that "it did not file a separate motion to dismiss and supporting brief due to Axxon's allegation of a direct contract between Axxon and GC Equipment containing a forum selection clause." (Document No. 33, p. 14). However, in the Amended Complaint, GC Equipment asserts that Plaintiff admits that "Axxon contracted with Globecore; not GC Equipment." Id. (citing Document No. 28, ¶ 22; Document No. 28-3). GC Equipment further asserts that Plaintiff also acknowledges that GC Equipment signed the Globecore Contract as Globecore's agent. Id. (citing Document No. 28, ¶ 23). GC Equipment, therefore, concludes that once the Amended Complaint was filed, the forum selection clause no longer supports personal jurisdiction over GC Equipment. (Document No. 33, p. 15).

GC Equipment further asserts it "has not been dilatory in seeking a ruling from the Court on its preserved Motion to Dismiss for Lack of Personal Jurisdiction." Id. GC Equipment notes that this Court has found waiver of the defense of personal jurisdiction where two years had passed and there had been substantial discovery before the defendant filed the separate motion as required. (Document No. 33, p. 13, 15-16) (citing In re Polyester Staple Antitrust Litigation, No. 3:03-CV-1516-RLV, 2008 WL 906331, at *16 (W.D.N.C. Apr. 1, 2008); see also Cont'l Bank, N.A. v. Meyer, 10 F.3d 1293, 1296-97 (7th Cir. 1993)). GC Equipment explains that, "[t]he Court noted that 'in evaluating waiver, the Court examines all of the relevant circumstances.'" Id.

In opposition to the instant motion, Plaintiff maintains that GC Equipment has waived its right to assert the defense of lack of personal jurisdiction due to its untimely response and its engagement in discovery. (Document No. 34, p. 19). Plaintiff argues that pursuant to Local Rule 7.1(c)(1), GC Equipment had to file a separate motion and supporting brief. Id. Plaintiff then notes that an objection to personal jurisdiction "may be deemed waived for failure to timely raise the defense, by formally submitting oneself to the jurisdiction of the court, or by 'submission through conduct.'" Id. (quoting In re Polyester Staple Antitrust, 2008 WL 906331, at *16). Plaintiff continues, stating that even though a defendant may have,

> literally complied with Rule 12(h) by including the jurisdictional issue in their answer, they did not comply with the spirit of the rule, which is 'to expedite and simplify proceedings in the Federal Courts.'

(Document No. 34, p. 20) (quoting Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990)) (internal citations omitted).

Plaintiff argues that GC Equipment, "raised the exact same defense to personal jurisdiction that it initially raised in its Answer to the Complaint filed on November 20, 2017." (Document No. 34, p. 20). Additionally, Plaintiff claims that GC Equipment failed to pursue the defense in a timely manner. Id. Plaintiff asserts that the parties filed a Rule 26 Report in the interim and that, "GC Equipment made no assertion whatsoever regarding whether there was an issue regarding personal jurisdiction." Id. GC Equipment also consented to Magistrate Judge jurisdiction and, "engaged in substantial discovery pertaining to the merits of this litigation by serving two sets of Interrogatories and two Requests for Production of Documents." Id.

Finally, Plaintiff contends that GC Equipment's excuse as to why it did not file its motion to dismiss until after Plaintiff filed its Amended Complaint is irrelevant. Id. Plaintiff maintains that the grounds cited in GC Equipment's original Answer filed on November 20, 2017, and those

15

cited in the motion to dismiss are the same: "[n]othing has changed." Id. The only difference between the original and Amended Complaint is the additional claim against Globecore. Id. Plaintiff argues this is not a new fact and that "GC Equipment not only knew of this issue, but is the party that raised the issue in its Answer and Affirmative Defenses." (Document No. 34, p. 20-21). Plaintiff asserts that "[t]here is nothing that stopped GC Equipment from previously pursuing the issue," and that instead, "GC Equipment took part in this litigation, engaged in discovery pertaining to the merits, and has clearly waived its right to assert the defense of lack of personal jurisdiction." (Document No. 34, p. 21).

In reply, GC Equipment first explains that Plaintiff's error in naming GC Equipment instead of Globecore as the contracting party was the cause of GC Equipment's delay in filing a proper motion to dismiss. (Document No. 35, p. 12). Furthermore, GC Equipment timely sought a decision on its preserved motion to dismiss when "Axxon corrected its erroneous pleadings and filed the Amended Complaint." (Document No. 35, p. 12). GC Equipment asserts that Plaintiff is attempting to benefit from the delay that was created by Plaintiff's initial erroneous pleading. (Document No. 35, p. 13).

GC Equipment next contends that the cases Plaintiff relies on are distinguishable on their facts. (Document No. 35, p. 14); See Branson v. American International Industries, 2016 WL 3190222 *6, 9 (M.D.N.C. June 7, 2016); Yeldell v. Tutt, 913 F.2d at 539). More specifically, GC Equipment argues that Polyester Staple and Continental Bank N.A., do not apply to the instant case because both defendants waited two years to file a separate motion while also participating in extensive discovery during that time. (Document No. 35, p. 13-14).

**D. Venue**

In response to the motion to dismiss, Plaintiff Axxon concludes that if this Court determines that it does not have personal jurisdiction over Defendant GC Equipment, then this matter should be transferred to the District of South Carolina or the Central District of California. (Document No. 34, p. 23) (citing Mulligan Elec. Co. v. Hudson Const. Co., 886 F.Supp. 845, 850 (N.D.Fla. 1995)).

GC Equipment opposes transfer by noting Plaintiff's argument that the only proper forum, at least with respect to the claims against Globecore, is North Carolina, based on the "mandatory forum selection clause" in the Globecore Contract. (Document No. 35, p.16). GC Equipment concludes that the entire case cannot be transferred, and so, GC Equipment should be dismissed. Id. If the Court were to transfer the case, GC Equipment contends it should be transferred to the Central District of California. Id.

### IV. CONCLUSION

The undersigned finds that Defendant GC Equipment's arguments for dismissal present a close call. However, it appears that Plaintiff has sufficiently satisfied its burden of showing jurisdiction here is appropriate. Construing "all relevant pleading allegations in the light most favorable to the plaintiff, assum[ing] credibility, and draw[ing] the most favorable inferences for the existence of jurisdiction" the undersigned will deny GC Equipment's motion to dismiss. See Combs, 886 F.2d at 676

Notably, the undersigned finds that the forum selection clause in the Globecore Contract requires this action to be litigated in North Carolina, *at least* as to Defendant Globecore.[4] The Globecore Contract was executed by Baum as "Vendor/Authorized Officer/ Signatory."

---

[4] Apparently, Globecore has not yet been served with the Amended Complaint and the Court has recently allowed Plaintiff an extension of time to effect service. See (Document Nos. 36, 37, and 38). As such, the Court and the parties do not yet have the benefit of Globecore's position on the issues before the Court, or any discovery responses that might shed additional light on these issues.

(Document No. 28-3, p.2). Moreover, it appears that Baum initialed each page of "Addendum A" to the Globecore Contract and signed the addendum as "Globecore Representative." (Document No. 28-3, pp. 3-13).

Based largely on the undisputed fact that Baum and GC Equipment executed that contract on behalf of Globecore, and that the conduct and claims in this lawsuit are so closely related to that document, the undersigned is reluctant to dismiss GC Equipment. Baum and GC Equipment's involvement with the Globecore Contract appears likely to be relevant to Plaintiff's claims against GC Equipment for interference with the USACE Contract. The undersigned is not convinced that GC Equipment's argument that an agent is not liable for a principal's breach of contract is applicable here. The issue here is not whether GC Equipment is liable for Globecore's alleged breach, but whether this Court has jurisdiction over GC Equipment regarding the claim that it intentionally interfered with Plaintiff Axxon's "USACE Contract."

In addition, although the instant case appears to be distinguishable from other cases that found a waiver of the personal jurisdiction defense, the undersigned finds it difficult to reconcile how GC Equipment could consent to Magistrate Judge jurisdiction, file a Rule 26 Report, and engage in discovery without objection, all the while believing that this Court lacked personal jurisdiction. See (Document Nos. 23 and 26).

At least at this stage of the litigation, the undersigned finds that the interests of judicial economy and efficient case management are best served if this action continues before this Court. The Court may consider renewed arguments regarding jurisdiction and/or venue at a later date, following further development of the record and Defendant Globecore's appearance in this matter.

**IT IS, THEREFORE, ORDERED** that "Defendant GC Equipment, LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Document No. 32) is **DENIED WITHOUT PREJUDICE**.

Signed: July 6, 2018

David C. Keesler
United States Magistrate Judge