**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-429-DCK**

| | |
|---|---|
| **AXXON INTERNATIONAL, LLC,** )<br>  )<br>**Plaintiff,** )<br>  )<br>  **v.** )<br>  )<br>**GC EQUIPMENT, LLC AND** )<br>**GLOBECORE GMBH,** )<br>  )<br>**Defendants.** )<br>―――――――――――――――――― ) | **ORDER** |

  **THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Default Judgment Against Defendant GC Equipment, LLC" (Document No. 70) and "Defendant Globecore GmbH's Motion For Summary Judgment" (Document No. 75). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. §636(c), and these motions are ripe for disposition. Having carefully considered the arguments, the record, applicable authority, and the arguments of counsel at a Status and Motions Hearing on August 12, 2020, the undersigned will <u>deny</u> the motions.

## I. BACKGROUND

**A. Factual Summary**

  Plaintiff Axxon International, LLC ("Axxon" or "Plaintiff"), is "a wholesale supplier of medical equipment and industrial machinery and fabrication" that "provides complete project management and support for local, state and federal agencies." (Document No. 28, p. 4). In or about August 2016, Axxon began preparing to bid on a project with the U.S. Army Corps of Engineers (the "USACE") to provide an Oil Filtration Trailer for the Chief Joseph Dam in

Bridgeport, Washington. See (Document No. 28, p. 4; Document No. 28-1; Document No. 28-2).

Around August 19-26, 2016, representatives of Plaintiff Axxon and GC Equipment, LLC ("GC Equipment") and/or Globecore GmbH ("Globecore") (together, "Defendants") exchanged email correspondence regarding the manufacture and delivery of a "mobile transformer oil reclaiming plant/trailer" from Germany. (Document No. 81-5); see also (Document No. 81, p. 20). Globecore is "organized and existing under the laws of Germany, with its principal place of business in Oldenburg Eversten, Germany." (Document No. 28, p. 2). Plaintiff describes Globecore as "a transformer oil filtration equipment manufacturer that sells and manufactures industrial equipment for the production of bitumen and transformer oil purification and regeneration across the country." (Document No. 28, p. 4). GC Equipment is Globecore's "factory franchised new equipment/material dealer with full parts, service, and warranty capacity in the United States." (Document 28, p. 4).

As part of the correspondence between the parties, Dylan Baum ("Baum") of GC Equipment noted that "[t]here will also have to be an agreement directly with the HQ in Germany." (Document No. 81, p. 20; Document No. 81-5, p. 1). Mr. Baum then communicated directly with Alexander Artiukh of Globecore in September 2016, and on November 1, 2016, regarding specifications for the equipment and a proposed agreement for Globecore to manufacture and deliver an oil filtration trailer/system to Axxon for the USACE project in Bridgeport, Washington. See (Document Nos. 81-6, 81-7, 81-8, 81-9).

Axxon entered into a contract with the USACE (the "USACE Contract") on September 30, 2016, that was later modified on October 17, 2017. (Document No. 28, p. 4) See also (Document

No. 28-1 and 28-2).  The total cost of the USACE Contract was $579,800, with a delivery due date of January 31, 2017.  (Document No. 28-2, pp. 3-4).

Axxon then executed a "Purchase Order" agreement with Globecore on or about November 9, 2016, for Globecore to provide an oil filtration system in fulfillment of Axxon's USACE Contract.  (Document No. 28, p. 4;  Document No. 28-3;  Document No. 81-2).[1]  The contracted cost of the oil filtration trailer from Globecore was $484,000.  (Document No. 28-3).  The "Purchase Order" provides that an "Oil Filtration Trailer:  in full accordance with the specifications attached hereto…" be shipped by April 7, 2017.  (Document No. 28-3, p. 2).  Payment was due "31 Days After Government Acceptance."  Id.  The "Purchase Order" also states that "[i]t is agreed and understood by and between the parties hereto that venue, in the event of any dispute shall be in the state of North Carolina, USA."  Id.

In addition, the "Purchase Order" provides that Globecore will not engage in communications with the USACE as follows:

> you acknowledge Axxon International, LLC as the prime contractor with respect to any and all communication with the U.S. Government and furthermore that you, as subcontractor to Axxon, will not interact with any personnel representing the Federal Government regarding this contract.  All communications will be conducted exclusively with Axxon International, LLC unless, and only in the event, that Axxon authorizes such other communication to you in writing.

(Document No. 28-3);  see also (Document No. 70-7, p. 3) (citing Document No. 70-2, pp. 2-3).

Baum executed the "Purchase Order" agreement as Globecore's authorized agent on November 9, 2016.  Id.  See also (Document No. 30, p. 6;  Document No. 70-2, p.2).  According to Mr. Baum, "GC Equipment was organized under the laws of the State of California primarily

---

[1] The "Purchase Order" designates Globecore as "Vendor," with an address in Dickinson, Texas, (Document No. 28-3).

to act as a manufacturer's representative of Globecore GmbH." (Document No. 57-1, p. 1). Baum later stated in another "Affidavit…" that he was a member and manager of GC Equipment, and that at "all times material to this action, GC Equipment acted as a manufacturer's representative and agent for Globecore GmbH ("Globecore")." (Document No. 33-1, p. 1; Document No. 81-12, p. 1). Baum further stated that he "accepted the contract on behalf of Globecore in California, signing the contract and emailing it back to Axxon." (Document No. 33-1, p. 3: Document No. 81-12, p. 3).

Less than a week after execution of the "Purchase Order" underlying this lawsuit, Globecore issued a "Manufacturer's Authorization" on November 14, 2016, on Globecore GmbH letterhead, signed by Dr. Julia Bessonova as Director of Globecore GmbH. (Document No. 62-10). The authorization states in pertinent part:

> Whereas **GLOBECORE GmbH** who are established and reputable manufacturers of **Equipment for transformer oil regeneration and purification** having factories **at Edewechter Landstrasse 173, Oldenburg-Eversten, Germany**
> . . .
> do hereby authorize
>
> **GC Equipment, LLC, located at 10600 Wilshire Blvd. #422, Los Angeles, CA, 90024**
>
> as the factory franchised new equipment/material dealer with full parts, service and warranty capacity in the Unites States of America.
>
> **GC Equipment, LLC** independently owns and operates an exclusive official service center for Globecore GmbH in USA at **1750-H Dickinson Ave (FM 1266) Dickinson, TX, 77539**.

(Document No. 62-10; Document No. 81-11).

The Texas address in the "Manufacturer's Authorization" for the "exclusive and official service center for Globecore GmbH" is the same as the address listed for "Vendor Globecore" on

the underlying "Purchase Order," and apparently, is within about four (4) miles of the office of Globecore's lead counsel in this matter.  (Document No. 28-3).

On or about November 16, 2016, Plaintiff Axxon paid a $20,000.00 deposit in accordance with the "Purchase Order" to GC Equipment as the agent for Globecore.  (Document No. 28, p. 5) (citing Document No. 28-3, p. 1); see also (Document No. 33-1, p. 11 and Document No. 62-5, p. 2).  Apparently, Axxon requested "an interim payment advance of 25% of the overall contract value" on or about January 18, 2017 and was paid $186,200 on or about February 13, 2017. (Document No. 75-4, p. 2).  Baum sent an email to Art Ward ("Ward"), Contract Manager for Axxon on March 6, 2017, updating Globecore's progress (and related expenses) in manufacturing the equipment and noting that "Axxon is not obligated to make progress payments to us . . . [but] it would help our budgeting to know if Axxon plans on forwarding the progress payment to us." (Document No. 75-11, p. 2).

Plaintiff alleges that in or about March 2017, it discovered that Globecore was making "no visible progress" in connection with its obligations under the "Purchase Order" agreement, and thereafter Plaintiff contacted GC Equipment "requesting updated progress reports."  (Document No. 28, p. 5).  "GC EQUIPMENT assured AXXON that GLOBECORE was in compliance with all specifications and obligations under the Agreement."  Id.  On March 3, 2017, Ward sent an email to GC Equipment demanding a "VERIFIABLE production schedule," due to the apparent delay in progress.  Id. (citing (Document No. 28-4).  According to the Amended Complaint, there were indications that Globecore was having cash problems, and Globecore allegedly "demanded additional advances and payment in full prior to delivery of the Oil Filtration System."  (Document No. 28, p. 6).

5

Globecore contends that GC Equipment demanded assurance from Axxon that it could perform under the agreement, but Axxon refused. (Document No. 75, p. 2). "Thereafter, GC GLOBECORE refused to release said equipment fearing that AXXON would fail[] to meet its contractual obligations." Id.

On April 18, 2017, Ward sent an email to Scott Britt ("Britt"), a Contracting Officer for the USACE, informing him that based on "their unacceptable performance," Axxon had replaced Globecore. (Document No. 81-1, p. 6; Document No. 81-3). Ward references a previous correspondence dated March 22, 2017 and states that Axxon had "engaged an alternative major component supplier Regenesys." Id. Axxon also sought an extension of the performance period from the USACE to July 28th. Id.

Axxon entered into an agreement with Regenesys on or about April 28, 2017, for an oil filtration trailer to be delivered by August 2, 2017, for $511,800.00. (Document No. 70-6).

On or about May 1, 2017, R.W. Lenz ("Lenz"), a principal of Axxon, sent a letter to Globecore in Dickinson, Texas, officially notifying Globecore of its alleged breach of the "Purchase Order" by failing to manufacture and deliver the oil filtration system by the contractual delivery date. (Document No. 28, p. 6) (citing Document No. 28-5, p. 2); see also (Document No. 81, p. 4; Document No. 81-1, p. 6; Document No. 81-4).

Axxon contends that when GC Equipment and Globecore became aware that Globecore would be terminated due to its failure to timely perform, GC Equipment "communicated directly with USACE and made gross misrepresentations regarding AXXON's failure to render payment." (Document No. 28, pp. 6, 9-10). Axxon alleges that Globecore failed to provide a copy of the "Purchase Order" to the USACE and led the USACE to believe that Globecore's requested accelerated payments were not paid to Globecore by Axxon. (Document No. 28, p. 7; Document

6

No. 81, pp. 4-5).    Axxon now contends that "Baum's communications with the USACE demonstrate that GC EQUIPMENT misappropriated the contract for the benefit of itself and GLOBECORE." (Document No. 81, p. 5).[2]

Britt sent a letter to Ward terminating the USACE Contract with Axxon on May 9, 2017, based on Axxon's failure to timely deliver the Oil Filtration Trailer.  (Document No. 28, p. 7) (citing Document No. 28-6).  See also (Document No. 81, p. 5).  Notably, the USACE contends that its contract with Axxon required delivery of the Oil Filtration Trailer by **January 31, 2017**, significantly sooner than the April 7, 2017 shipping date in the "Purchase Order" agreement between Axxon and Globecore.  (Document No. 28-6, p. 2;  Document No. 28-3);  see also (Document No. 28-2, p. 4).  The USACE appears to have been convinced that Axxon "had repeatedly made misrepresentations" to it regarding, *inter alia*, the schedule for the project and purported payments to Globecore.  (Document No. 28-6).  Britt alleged that Axxon had been paid $186,200.00, "for the purpose of paying the subcontractor, Globecore to ensure timely delivery," but that Axxon never provided those funds to Globecore.  Id.

Axxon alleges that GC Equipment "contracted directly with the USACE for the project," and that on September 13, 2017, GC Equipment paid Globecore $477,500, "for supplying the oil filtration system." (Document No. 81, p. 13) (citing Document No. 81-13).  Axxon further asserts that the contract between GC Equipment and the USACE was for $100,000 more than GC Equipment/Globecore would have been entitled to under the "Purchase Order." (Document No. 28, p. 10;  Document No. 81, p. 5).

---

[2]  It does not appear that Plaintiff has provided a date, or any other evidence, of the alleged communications between Defendants and the USACE.  See (Document No. 28, p. 9;  Document No. 70-2, p. 5).  As such, it is unclear to the Court whether these alleged communications happened before or after the USACE/Axxon and the Axxon/Globecore contracts were terminated.  However, Defendant has provided an email exchange *initiated by the USACE* to Baum, on April 25-26, 2017, regarding Globecore's interactions with Axxon, the current status, and estimated delivery date.  (Document No. 75-13).

7

**B. Procedural History**

Based on the foregoing, Plaintiff Axxon initiated this action with the filing of its original Complaint (Document No. 1) against GC Equipment, LLC, doing business as Globecore GmbH, on July 20, 2017.

The parties consented to Magistrate Judge jurisdiction, and this case was reassigned on December 8, 2017. (Document Nos. 22 and 23). On January 31, 2018, the undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 26). The "…Case Management Plan" included the following deadlines: discovery – September 24, 2018; mediation – October 15, 2018; and dispositive motions - October 22, 2018. Id.

On March 20, 2018, Plaintiff filed an "Amended Complaint" naming both GC Equipment *and* Globecore GmbH ("Globecore") as Defendants. (Document No. 28). The Amended Complaint states that Plaintiff is a limited liability company, organized and existing under the laws of the State of North Carolina, with its principal place of business in Rock Hill, South Carolina. (Document No. 28, p. 1). Plaintiff's members are Randy Lenz ("Lenz"), Art Ward ("Ward"), and Equity Investment Partners, LLC ("EIP"). Id.

The Amended Complaint describes GC Equipment as "a limited liability company, organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California." (Document 28, p. 2). GC Equipment's members are Dylan Baum ("Baum") and Richard Messina ("Messina"), both citizens of California. Id. Defendant Globecore "is a foreign corporation organized and existing under the laws of Germany, with its principal place of business in Oldenburg Eversten, Germany." Id.

According to the Amended Complaint, this Court has *in personam* jurisdiction over GC Equipment and Globecore because of their "substantial and continuous contacts with the State of

8

North Carolina, including entering into a subcontractor agreement with AXXON in North Carolina." (Document No. 28, p. 2). Additionally, Plaintiff asserts that the Agreement between Axxon and Globecore "has a mandatory venue provision, which requires that venue for any dispute shall be in North Carolina." Id.; see also, (Document No. 28-3). Plaintiff maintains that GC Equipment "was and is Globecore's authorized agent to act on behalf of Globecore," and acted as Globecore's authorized agent pertaining to the Purchase Order agreement. (Document No. 28, pp. 2, 4). Plaintiff also asserts that GC Equipment had "routine and continuous" contact with Plaintiff in North Carolina regarding execution of the underlying agreement(s). (Document No. 28, pp. 2-3).

The Amended Complaint asserts claims for: (1) breach of contract against Globecore; and (2) intentional interference with contract against both GC Equipment and Globecore. (Document No. 28, pp. 7-10). Plaintiff contends that Globecore breached the contract by failing to comply with the contractual delivery date and by interacting through its agent, GC Equipment, with the USACE without authorization from Axxon. (Document No. 28, pp. 7-8). Plaintiff further alleges that GC Equipment and Globecore are liable for tortious interference with contract because they "knowingly and willfully interfered with Axxon's contractual relationship with USACE." (Document No. 28, pp. 8-10).

The "Amended Complaint" notes that it was filed with opposing counsel's written consent pursuant to Fed.R.Civ.P. 15(a)(2). (Document No. 28, p. 1, n. 1). Moreover, on April 3, 2018, "Defendant GC Equipment LLC's Written Consent To Amend Complaint" was filed with the Court confirming that GC Equipment consented to allowing Plaintiff to amend its Complaint, naming GC Equipment as a Defendant, on March 20, 2018. (Document No. 29). Neither the "Amended Complaint," nor "Defendant GC Equipment LLC's Written Consent To Amend

Complaint" suggest that GC Equipment disputed the Court's jurisdiction in this matter. (Document Nos. 28 and 29).

"Defendant GC Equipment LLC's Motion To Dismiss, Answer, And Affirmative Defenses In Response To Plaintiff's Amended Complaint" (Document No. 30) was also filed on April 3, 2018, seeking dismissal pursuant to Fed.R.Civ.P. 12 (b)(2) and 12(b)(6). GC Equipment's Answer acknowledges that "during the time described in Axxon's Amended Complaint, GC Equipment acted as a manufacturer's representative and agent for GlobeCore." (Document No. 30, pp. 4, 12). GC Equipment goes on to assert that it was Axxon and GlobeCore that entered into the "Purchase Order." (Document No. 30, pp. 6, 9-10) (citing Document No. 28-3).

"Defendant GC Equipment LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Document No. 32) was filed on April 17, 2018. GC Equipment sought dismissal of this action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). (Document No. 32). GC Equipment asserted that it is not subject to personal jurisdiction in North Carolina because it lacks the requisite contacts with the forum state. (Document No. 33, p. 7). The undersigned issued an "Order" on July 6, 2018, denying without prejudice "Defendant GC Equipment, LLC's Motion to Dismiss for Lack of Personal Jurisdiction" (Document No. 32). (Document No. 39)

The undersigned issued an "Order" (Document No. 43) on August 17, 2018, granting "Defendant GC Equipment LLC's Motion To Vacate or Modify Pretrial Order And Case Management Plan And To Stay Or Suspend Discovery Pending Service And Appearance By Defendant Globecore GMBH" (Document No. 40). The Court stayed this matter "until Defendant Globecore GmbH is served, or **December 18, 2018**, whichever occurs first." (Document No. 43, p.1).

On September 7, 2018, this Court received a letter from Dr. Julia Bessonova, Director of Globecore GmbH, indicating that Globecore received a copy of the Amended Complaint on August 27, 2018, and stating that Globecore "has no financial connection with GC Equipment regarding this or any other contract." (Document No. 44). Plaintiff then filed a "...Motion To Strike Defendant Globecore GMBH's Response," because it was not filed by licensed counsel. (Document No. 45). The undersigned denied the motion to strike without prejudice. (Document No. 46).

On October 2, 2018, Plaintiff filed a "Notice Of Filing Of Return Of Service Certificate" (Document No. 47) confirming that the Amended Complaint was served on Defendant Globecore GmbH on August 27, 2018. "Plaintiff's Motion For Entry Of Clerk's Default Against Defendant Globecore GMBH" (Document No. 48) was also filed on October 2, 2018.

On October 9, 2018, notices of appearance of Defendant Globecore's counsel, Nancy Black Norelli, Donna P. Savage, and Keith A. Gross were filed with the Court. (Document Nos. 48-51). The next day, Globecore's "...Answer And Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 53) was filed.

On October 12, 2018, the undersigned denied "Plaintiff's Motion For Entry Of Clerk's Default..." and directed the parties to file proposed revisions to case deadlines. (Document No. 54). Based on a proposal by counsel for each party, the undersigned re-set case deadlines on October 29, 2018, including the following: Discovery Completion – June 24, 2019; Mediation Report – July 10, 2019; Motions – July 19, 2019; and Trial – October 28, 2019. (Document No. 56).

On January 10, 2019, counsel for GC Equipment filed a "Motion To Withdraw As Counsel" (Document No. 57). The motion states in part that "GC Equipment does not want the

undersigned counsel to pursue any further defense on its behalf, with the understanding that the Court may enter an adverse judgment against GC Equipment **if Plaintiff proves its claims against GC Equipment**." (Document No. 57, p. 2) (emphasis added). The "Motion To Withdraw…" includes an "Affidavit In Support…" (Document No. 57-1) executed by Dylan Baum, Member/Manager GC Equipment, LLC. Baum's Affidavit provides:

> 2.  GC Equipment was organized under the laws of the State of California **primarily to act as a manufacturer's representative for Globecore GmbH**. That relationship has ended.
>
> 3.  For economic reasons, GC Equipment has elected to wind-up its business and terminate its existence under California law.
>
> 4.  As Member/Manager of GC Equipment, I have been informed and understand that GC Equipment may owe Plaintiff damages as alleged in the Complaint, **if proven at the trial of this case**. In view GC Equipment's current financial condition and intention to terminate its existence, GC Equipment has no interest or the financial ability in continuing to defend or contesting Plaintiffs claims, even if that means that an adverse judgment may be entered against GC Equipment.
>
> 5.  GC Equipment will not oppose or contest the entry of judgment which may be entered against it by the Court for such damages as may be awarded to Plaintiff by the Court. Therefore, GC Equipment does not wish its counsel to pursue any further defense on its behalf.

(Document No. 57-1, pp. 1-2) (emphasis added).

The undersigned granted GC Equipment, LLC's counsel's "Motion To Withdraw As Counsel" (Document No. 57) on January 10, 2019, and further ordered GC Equipment to retain new counsel by January 24, 2019, or face possible sanctions, including default judgment. (Document No. 58).

"Plaintiff's Motion To Strike Pleadings And For Entry Of A Default Against Defendant GC Equipment, LLC" (Document No. 59) was filed on February 4, 2019. GC Equipment failed to file any response. <u>See</u> Local Rule 7.1(e). "Defendant Globecore GmbH's Motion To Dismiss"

12

(Document No. 61) was filed on February 6, 2019, seeking dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2). On September 30, 2019, the undersigned denied without prejudice Globecore's motion to dismiss and directed the Clerk of Court to enter default against GC Equipment. (Document No. 66, pp. 16-17). That same day, the Clerk's "Entry Of Default" (Document No. 67) was docketed.

Now pending is "Plaintiff's Motion For Default Judgment Against Defendant GC Equipment, LLC" (Document No. 70) filed on October 30, 2019. GC Equipment has failed to file any response. Globecore filed a "…Notice…" (Document No. 71) on November 1, 2019, stating that it would not be filing a response.

Also pending is "Defendant Globecore GmbH's Motion For Summary Judgment" (Document No. 75) filed on February 27, 2020. "Plaintiff's Brief In Opposition To Defendant Globecore GmbH's Motion For Summary Judgment" (Document No. 81) was filed on April 23, 2020; and "Globecore GmbH's Objection And Reply To Axxon International, LLC's Response…" (Document No. 82) was filed on April 30, 2020.

On July 9, 2020, the undersigned issued an Order scheduling a Status and Motions Hearing to assist the Court's consideration of the pending motions. (Document No. 83). In that Order, the undersigned specifically directed that local counsel should be physically present at the hearing, if possible, with "out-of-state counsel appearing remotely via telephone, skype, or zoom."[3] Id. The undersigned further directed that counsel confer and file a Status Report by August 10, 2020. Id. Neither side requested any exception to the Court's instructions.

---

[3] The undersigned's staff later clarified in an email the "expectation and preference that out-of-state counsel only appear virtually" citing concerns about expense, and more importantly, health risks during the ongoing pandemic.

The parties' Status Report, filed August 5, 2020, indicated that counsel were unable to resolve their dispute and suggested that the discovery period that ended December 31, 2019, might need to be extended.  (Document No. 84).  Counsel assert that discovery has not been completed and that the current trial date should be continued based on "issues regarding the Covid-19 pandemic."

A Status and Motions Hearing was held on August 12, 2020, and the undersigned took the pending motions under advisement.[4]

The pending motions are now ripe for review and disposition.

## II.  STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed.R.Civ.P. 55(a).  "Once a defendant has been defaulted, the plaintiff may then seek a default judgment."  Migun Life, Inc., v. Cox, No. 1:17-CV-221-MR, 2018 WL 6028720, at *1 (W.D.N.C. Nov. 16, 2018).  If the plaintiff's claim is for a sum certain or can be made certain by computation, the Clerk of Court may enter the default judgment.  Id.  (citing Fed.R.Civ.P. 55(b)(1)).  In all other cases, the plaintiff must apply to the Court for a default judgment.  Id. (citing Fed.R.Civ.P. 55(b)(2)).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  A defendant, however, "is not held . . . to admit conclusions of law."  Ryan, 253 F.3d at 780 (quoting Nishimatsu,

---

[4]  Plaintiff's counsel, Eric Lee, followed the Court's direction regarding hearing attendance; while Defendant's counsel, Keith Gross, attended in person in violation of the Court's Order and instructions. The Court admonishes counsel and the parties to please follow the Court's directives regarding these important issues related to safety during the pandemic.

14

515 F.2d at 1206).  The Court therefore must determine whether the facts as alleged state a claim for relief.  GlobalSantaFe Corp. v. Globalsantafe.com, 250 F.Supp.2d 610, 612 n.3 (E.D.Va. 2003).

The decision regarding whether to enter "default judgment is left to the sound discretion of the trial court."  Allstate Insurance Company v. Frost, No. 3:16-CV-134-RJC-DSC, 2018 WL 1175230, at *2 (W.D.N.C. Mar. 6, 2018);  see also Duke Energy Carolinas, LLC v. BlackRock Coal, LLC, No. 3:11-CV-616-RJC-DSC, 2012 WL 1067695, at *6 (W.D.N.C. Mar. 29, 2012) (awarding default judgment in the amount of $6,290,272.01 as well as interest and costs).

Rule 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P.  56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party.  Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011).  The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  In deciding a motion for summary judgment, a court views the evidence in the light most

15

favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

## III. DISCUSSION

### A. Axxon's Motion for Default Judgment

By the pending motion, Plaintiff Axxon declares that it is "entitled to a default judgment in the principal amount of $105,800.00 plus prejudgment interest through October 7, 2019 of $20,151.28 with pre-judgment interest continuing to accrue at the rate of $23.19 per diem until the entry of judgment." (Document No. 70, p. 2). Axxon contends that this Court has the requisite jurisdiction to render a valid default judgment and that GC Equipment is liable for tortious interference with contract. (Document No. 70-7, pp. 8-11).

"[I]n order to prove tortious interference with contract, a party must show: (1) a valid contract between the party and a third person; (2) the opposing party knows of the contract; (3) the opposing party *intentionally induces* the third person not to perform the contract; (4) and in doing so acts *without justification*; (5) resulting in actual damage to the party asserting the claim." Foodbuy, LLC v. Gregory Packaging, Inc., No. 3:16-CV-809-FDW-DCK, 2018 WL 4603159, at *30 (W.D.N.C. Sept. 25, 2018), supplemented, 2019 WL 6248556 (W.D.N.C. May 9, 2019) (citing Performance Sales & Mktg., LLC v. Lowe's Companies, Inc., No. 5:07-CV-140-RLV, 2010 WL 2294323, at *10 (W.D.N.C. June 4, 2010).

Relying on the "Affidavit Of Randolph Lenz," Axxon contends that "GLOBECORE, **through its agent GC EQUIPMENT**, intentionally and unjustifiably communicated with the USACE, and made accusations and misrepresentations about AXXON, which resulted in the termination of the USACE Contract" and that Defendants' "actions were intended to induce the

16

USACE not to perform the contract with AXXON." (Document No. 70-7, p. 11) (citing Document No. 70-2, p. 5) (emphasis added). Axxon further contends that GC Equipment and Globecore had no justification for interfering with Axxon's contractual relationship and that their "actions were designed to sabotage AXXON's contractual relationship with the USACE." Id. (citing Document No. 70-2, p. 6). Axxon alleges that "GC EQUIPMENT confirmed to the USACE that GLOBECORE could complete the oil filtration trailer within five weeks" and thus "misappropriated the contract for the benefit of itself and GLOBECORE." Id. (citing Document No. 70-2, p. 6). According to Axxon, USACE then terminated its contract with Axxon and entered into a no bid contract with GC Equipment to provide the same items under the contract between USACE and AXXON. Id. Axxon concludes that the foregoing establishes its claim against GC Equipment for tortious interference with contract. Id.

Plaintiff Axxon further argues that it can establish its damages as result of GC Equipment's interference. (Document No. 70-7, pp. 12-13). Axxon notes that its contract with the USACE was for $579,800, and that Globecore agreed in the Purchase Order to provide the oil filtration trailer for $484,000; therefore, Axxon contends that it lost $95,800 as a result of GC Equipment's tortious interference. (Document No. 70-7) (internal citations omitted). In addition, Axxon alleges that to mitigate its damages "incurred as a result of GLOBECORE's failure to timely provide the trailer" it contracted with Regenysis, Inc. to provide the oil filtration trailer. (Document No. 70-7, pp. 12-13). The Regenysis contract included a $10,000 deposit that Axxon also claims as part of its losses. (Document No. 70-7, p. 13). As a result, Axxon contends that GC Equipment's actions caused a total loss of $105,800, plus accruing interest. As of the date of the hearing, Axxon's counsel estimated the total claim as being $133,140.20.

GC Equipment has failed to file any response to "Plaintiff's Motion For Default Judgment…" (Document No. 70). Globecore filed a "…Notice To The Court" (Document No. 71) on November 1, 2019, stating that it would "not be filing a response."

The undersigned finds that Axxon's allegation that the USACE terminated its contract with Plaintiff due to GC Equipment's interference or "sabotage" is, at best, an incomplete explanation for the termination of the USACE Contract. The USACE noted in its May 9, 2017 "Termination for Cause of Purchase Order" letter (attached to the Amended Complaint) that Axxon had contracted to deliver an Oil Filtration Trailer by January 31, 2017, and that at least through April 2017, Axxon was still trying to extend the delivery deadline. (Document No. 28-6). The USACE indicates that it sent another letter to Axxon on April 5, 2017, directing Axxon "to show cause as to why the contract should not be terminated." (Document No. 28-6, p. 2).

The USACE also noted that Axxon had "repeatedly made misrepresentations to the government." (Document No. 28-6, p. 3). These purported misrepresentations appear to be supported by the terms of the Purchase Order between Axxon and Defendant Globecore. (Document No. 28-3). As noted above, the Purchase Order was executed on November 8, 2016, and required delivery of the equipment by April 7, 2017. Id. Therefore, it appears Axxon knew, or should have known, for many months that it would breach its agreement with the USACE.

Axxon acknowledges in the Amended Complaint that its "failure to comply with the contractual delivery date" of the Oil Filtration Trailer was at least part of the reason the USACE Contract "was terminated for cause by the USACE." (Document No. 28, p. 7) (citing Document No. 28-6). See also (Document No. 70-7, p. 5) (citing Document No. 70-2, pp. 4-5) ("the USACE Contract was terminated for cause by the USACE for AXXON's failure to deliver the Oil Filtration Trailer.").

18

To the extent Defendants communicated with the USACE, it appears to have been related to concern that Globecore had not received the $186,200.00 payment that Axxon had apparently represented to the USACE would be paid to Globecore.  Id.  The parties have provided little, if any, detail about the alleged communication between Defendants and the USACE.  Contrary to Axxon's assertions that Defendants' interference led to termination of the USACE Contract, the USACE's letter clearly states that it terminated Axxon for its failure to timely deliver the oil filtration trailer pursuant to the terms of its contract, and Axxon's inability to account for the $186,200.00 advance payment intended for subcontractor Globecore.  Id. [5]

Based on the foregoing, there appear to be genuine issues of fact regarding GC Equipment's alleged tortious interference that preclude a default judgment and an award of damages at this time.  A fact finder might determine that the USACE terminated its contract with Axxon based solely on its failure to timely deliver and on misrepresentations made to the Government, rather than any inducement not to perform allegedly perpetrated by Defendants. What, if any, impact Defendants' communications had on the USACE Contract appears to be a question of fact.  Plaintiff's conclusory allegations that Defendants *intentionally* induced the USACE not to perform the contract with Axxon, and did so *without justification*, are also inadequate to support default judgment at this time.  See Performance Sales & Mktg., LLC, 2010 WL 2294323, at *10.  Moreover, the undersigned is also not convinced that Axxon has established actual damages, and/or whether damages can be properly assessed against GC Equipment, whom Axxon alleged acted as Globecore's agent.

---

[5]   At the hearing, Plaintiff acknowledged that it never paid any of the $186,200 to Globecore or GC Equipment, nor has it returned the funds to the USACE.  As such, it appears Axxon has, for over three (3) years, withheld nearly double the funds it claims it lost as a result of Defendants' alleged interference.  See (Document No. 70-7, p. 12).

In addition, the undersigned finds that the following caselaw is instructive and raises more doubts about Plaintiff's claim.

> The Fourth Circuit recently explained the economic loss rule and its application in North Carolina:
>
>> A "tort action must be grounded on a violation of a duty imposed by operation of law," not a violation of a duty arising purely from "the contractual relationship of the parties." Rountree v. Chowan Cty., 796 S.E.2d 827, 831 (N.C. Ct. App. 2017) (citation and internal quotation marks omitted). Thus, a "tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract." Id. at 830 (citation omitted). "It is the law of contract," not tort law, "which defines the obligations and remedies of the parties in such a situation." Id. (citation omitted). Accordingly, "North Carolina law requires" courts "to limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) (quoting Newton v. Standard Fire Ins. Co., 291 N.C. 105, 229 S.E.2d 297, 301 (1976)).
>
>> The economic loss rule reflects "the fundamental difference between tort and contract claims." Id. Contract law is designed to place an injured party in the position he would have occupied had the parties adhered to their contract. Tort law, by contrast, incorporates "principles of punishment" by allowing recovery of punitive damages. Strum v. Exxon Co., 15 F.3d 327, 330 (4th Cir. 1994).

Foodbuy, LLC v. Gregory Packaging, Inc., No. 3:16-CV-809-FDW-DCK, 2018 WL 4603159, at *27–28 (W.D.N.C. Sept. 25, 2018), supplemented, 2019 WL 6248556 (W.D.N.C. May 9, 2019).

The Amended Complaint asserts a breach of contract claim against Globecore, and a tortious interference claim against Globecore and GC Equipment. (Document No. 28). Within *the breach of contract claim*, Axxon asserts that:

> Further, in breach of the Agreement, GLOBECORE, through its
> agent, contacted and interacted with the USACE without prior
> written authorization from AXXON.

(Document No. 28, ¶ 48). Thus, by Axxon's own allegations, it does not appear that the tortious

interference claim is "identifiable and distinct" from the breach of contract claim – in fact, it is

part of the breach of contract claim. Id. A clear term of the Purchase Order was that Defendant(s)

would "not interact with any personnel representing the Federal Government regarding this

contract." (Document No. 28-3). Such alleged interaction appears to be the basis of both of

Plaintiff's claims.

Applying the above authority to Plaintiff's pleading, the undersigned is simply not

persuaded that Plaintiff has alleged sufficient facts to establish its claim against GC Equipment

and entitlement to the relief requested. Rather, Plaintiff's pleadings and exhibits suggest that

Plaintiff's conduct was in part, if not entirely, the cause of the USACE termination of its agreement

with Axxon. Moreover, it is not clear that the facts as alleged can support both breach of contract

and tortious interference claims.

Based on the foregoing, the Court in its discretion will deny the motion without prejudice.

If further discovery is allowed and provides additional information, and/or if a jury finds

Defendant(s) liable for tortious interference with contract, the Court may reconsider a motion for

default judgment against GC Equipment.

**B**. **Globecore's Motion for Summary Judgment**

By its motion, Globecore presents five main contentions: (1) it is a foreign corporation

and is not subject to the jurisdiction of this Court; (2) it was not a party to the contract and there

is no agency relationship; (3) even if there is an agency relationship, Plaintiff cannot maintain a

lawsuit against both Globecore and GC Equipment; (4) Globecore was justified withholding the

equipment because Axxon failed to provide adequate assurances;  and (5) Axxon cannot show damages.

## 1.  Jurisdiction

Globecore argues that Plaintiff cannot prove personal jurisdiction and that it has insufficient contacts with the forum.  (Document No. 75, pp. 11-12).  Globecore further argues that it has a "corporate separateness" from GC Equipment, that precludes being hauled into a North Carolina court based on GC Equipment's contacts.  (Document No. 75, pp. 13-16).

In response, Plaintiff's main argument is that Globecore consented to personal jurisdiction in North Carolina by executing the Purchase Order which included a mandatory forum selection clause.  (Document No. 81, pp. 10-11).

Defendant Globecore's reply largely consists of a long list of "objections" to assertions made by Plaintiff Axxon.  (Document No. 82, pp. 1-15).  As such, it is not particularly helpful, and tends to show that that there are still numerous issues of fact in this case.  Later in its brief, Globecore does briefly address Axxon's arguments.  (Document No. 82, pp. 15-17).  Regarding jurisdiction, Globecore concludes that "there is no evidence of an agency relationship," therefore, Axxon "cannot rest upon the contract's mandatory venue clause."  (Document No. 82, pp. 15-16).

The undersigned observes that the forum selection clause in the Purchase Order provides that:  "[i]t is agreed and understood by and between the parties hereto that venue, in the event of any dispute, shall be in the state of North Carolina, USA."  (Document No. 28-3, p. 2).  Moreover, the undersigned notes that the Supreme Court has held that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," and that "a valid forum-selection clause [should be] given

22

controlling weight in all but the most exceptional cases." Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 (2013) (citations omitted).

In an earlier brief, Globecore acknowledged "that personal jurisdiction may arise out of an agency relationship 'when parties manifest consent that one shall act on behalf of the other party and subject to his control.'" (Document No. 61, p. 6) (citing Bauer v. Douglas Aquatics, Inc., 207 N.C.App. 65, 74 (2010). In denying Globecore's motion to dismiss (Document No. 61), the undersigned found that Plaintiff's arguments supporting jurisdiction to be persuasive. (Document No. 66, p. 14). Contrary to Globecore's conclusions, there is significant evidence of an agency relationship, including: Baum's affidavits; Globecore's own "Manufacturer's Authorization" (Document No. 62-10); and communications between the parties indicating that GC Equipment was acting as Globecore's agent in executing the Purchase Order agreement, as well as in arranging an eventual agreement between the USACE and Globecore, whereby Globecore provided an oil filtration trailer to the USACE.

To date, Defendant Globecore has presented little, if any, evidence refuting that GC Equipment and/or Dylan Baum were acting at all times relevant to this case as Globecore's agent. Notably, in the course of three (3) years of litigation, Globecore has failed to depose Mr. Baum. Apparently, Globecore expects the Court to take counsel's word that there was no agency relationship with GC Equipment, despite Baum's affidavits stating there was such a relationship, and Globecore's own documents from which a jury might find there was an agency relationship and/or concerns about the credibility of Globecore's blanket denials. See (Document Nos. 44, 62-10, 75-14).

Based on the foregoing, the undersigned is persuaded that this Court has jurisdiction over this matter.

**2. Agency**

Next, Globecore argues that Plaintiff Axxon cannot sue both GC Equipment and Globecore for claims arising under an alleged principal-agent relationship. (Document No. 75, pp. 16-19).

In support, Globecore provides the following authority:

> In North Carolina where a principal-agent relationship exists, a party must elect to sue either the principal or the agent. When the agency relationship is discovered: "the aggrieved party seeking damages must elect whether he will hold the principal or the agent liable: he cannot hold both."· *Howell v. Smith.* 261 N.C. 256. 259 (1964) This principal has been the law of North Carolina since 1946. An "aggrieved party seeking damages through the Court is to be put to his election as to which he shall hold liable – the principal or the agent - and cannot hold both of them." *Watson v. Whitley*, 226 N.C. 537, 541 (1946).

(Document No. 75, pp. 17-18).

Globecore contends there is/was no principal agent relationship between GC Equipment and Globecore. (Document No. 75, pp. 19-21). Specifically, Globecore asserts that it "was not a signatory to the agreement, nor did [it] control the means and details regarding the transaction." (Document No. 75, p. 21). Nevertheless, Globecore argues that it "was justified to suspend, or terminate the performance of the contract." (Document No. 75, pp. 21-22); <u>see also</u> (Document No. 75, p. 9) (citing Document No. 75-14) ("When GLOBECORE discovered that AXXON refused to pay all or part of the progress payment forward, it halted performance in fear that it would not get paid the remaining balance").

Plaintiff's response asserts that Baum signed the Purchase Order agreement as the authorized agent of Globecore. (Document No. 81, p. 6, 19-21). Plaintiff includes the following authority:

> Generally, in North Carolina, an agent may contractually obligate his principal in three situations: 1) when the agent acts within the scope of his actual authority; 2) when the agent acts within the scope

of his apparent authority and the third-party does not have reason to believe that the agent is exceeding his actual authority; and 3) when the principal ratifies the agent's previously unauthorized actions.

(Document No. 81, p. 6) (quoting In Re: NC & BA Warranty Co., Inc., 504 B.R. 316 (Bankr. M.D.N.C. 2018). Plaintiff adds that "An agency relationship 'arises when parties manifest consent and one shall act on behalf of the other and subject to his control'" and that "'[A]n agency relationship may be deemed to exist for purposes of vicarious liability in the absence of an actual agency' under the legal theory 'known alternatively as 'apparent agency' or 'agency by estoppel.'" Id. (quoting Bauer v. Douglas Aquatics, Inc., 207 N.C.App. 65, 698 S.E. 2d 757, 764 (2010)) (internal citations omitted).

Plaintiff has previously identified other documents related to this action where Dylan Baum has signed as a representative of Globecore. See (Document No. 62-4, p. 13; Document No. 62-11, p. 2).

In reply, Defendant Globecore contends that there is not "a scintilla of evidence" that GC Equipment was an agent of Globecore, GmbH. (Document No. 82, p. 15). Globecore asserts that there are "two essential ingredients in the principal-agent relationship: (1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." Id. (citing Coastal Plains Utilities, Inc. v. New Hanover County, 166 N.C.App. 166, 344-345 (2005).

After careful consideration of the record and the briefs, the undersigned is not persuaded by Globecore's agency argument. It appears that Dylan Baum and GC Equipment acted as Globecore's agent in securing a contract with Axxon (and later the USACE) to provide an oil filtration trailer, for which Globecore would be paid close to $500,000.

Contrary to the assertion that Globecore "never manufactured this type of equipment," the "Manufacturer's Authorization" states that Globecore is an "established and reputable

25

manufacturer[] of **Equipment for transformer oil regeneration and purification**." <u>Compare</u> (Document No. 62-10, p. 1 and Document No. 44). In addition, Dr. Bessonova's assertions to the Court that Globecore "has no financial ties with GC Equipment," "never manufactured this type of equipment," and "has no connection with this contract" are contradicted by Plaintiff's supporting documents, including Baum's affidavits, and through the subsequent agreement between USACE and GC Equipment whereby Globecore was "paid $477,500.00 by GC Equipment for supplying the oil filtration system" to the USACE. (Document No. 81, p. 13) (citing Document No. 81-13) (September 13, 2017 wire transfer of $477,500.00).

It is not plausible that GC Equipment acted without authority from Globecore to engage in these agreements; moreover, it was Globecore's refusal to deliver the equipment that led to the termination of the agreement with Axxon. At minimum, there are genuine issues of fact about Defendants' relationship that preclude an award of summary judgment based on a lack of agency.

**3. Anticipatory Breach**

Although Globecore suggests it was not a party to the underlying Purchase Order, as noted above, it asserts that "it was justified to suspend, or terminate the performance of the contract." (Document No. 75, pp. 21-22). Globecore contends that it "had a right to suspend performance" because Axxon failed to give GC Equipment assurances about payment and/or failed to account for funds it had received from the USACE. (Document No. 75, pp. 22-23).

Plaintiff contends there are numerous factual issues regarding whether its conduct constituted a refusal to perform, and whether it was treated as such by Globecore. (Document No. 81, p. 21). Plaintiff notes, for example, that it had no obligation to pay Globecore until 30 days after Government acceptance. <u>Id.</u> at 22.

Defendant's reply brief seems to abandon this issue. There does not seem to be evidence that Axxon was entitled to the early payment it received, and certainly the Purchase Order does not provide for payment to Globecore until "31 Days After Government Acceptance." (Document No. 28-3). Regardless, the undersigned again finds there are at least genuine issues of fact regarding alleged anticipatory breach, and as such, this argument does not support a claim for summary judgment.

**4. Damages**

Finally, Globecore notes that Axxon is seeking $105,800.00 in damages, but that Axxon received and spent $186,200.00 from the USACE. (Document No. 75, p. 24). In addition, Globecore contends that Axxon is suing the USACE for $393,000.00. Id. (citing Document No. 75-4). "Thus, if Axxon prevails on all its causes of action, it will receive $871,800.00 excluding all relief for attorney fees, and etc." Id. Globecore concludes that Axxon has retained more than the benefit of its bargain under the Purchase Order, and therefore, has no damages. Id.

Plaintiff contends there is "a factual issue as to whether AXXON will save anything as a result of GLOBECORE's breach." (Document No. 81, p.23). Plaintiff seemed to acknowledge at the hearing that its damages are not knowable at the moment, pending related litigation against the USACE, but argued that it is still entitled to seek damages against Globecore and GC Equipment.

In reply, and also at the hearing, Globecore asserts that Axxon's claim of damages is speculative.

The undersigned finds this to be Defendant Globecore's most persuasive argument to date; nevertheless, the undersigned will respectfully decline to grant summary judgment for Globecore based on the question of what, if any, award of damages to Axxon would be appropriate.

In sum, the parties' briefs and attachments indicate to the undersigned that there are genuine issues of fact that require review by a jury. Respectfully, the undersigned suggests that this case is well-positioned to be resolved by a compromise settlement agreement, instead of investing further resources in discovery and/or a trial. If the parties are unable to resolve this matter, the Court will proceed with trial as so on as possible.

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion For Default Judgment Against Defendant GC Equipment, LLC" (Document No. 70) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Globecore GmbH's Motion For Summary Judgment" (Document No. 75) is **DENIED**.

**IT IS FURTHER ORDERED** that the trial now scheduled for September 2020 is **CANCELLED**, and that this case is moved to the trial term beginning **February 1, 2021**.

**SO ORDERED**.

Signed: August 21, 2020

David C. Keesler
United States Magistrate Judge

28